[Civ. No. 22130.   Second Dist., Div. Three.   May 2, 1958.]

RUTH ELIZABETH HARMON, Respondent, v. FRANCIS L. HARMON, Appellant.

Weyl, Dunaway & Weyl and John A. Weyl for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—On February 17, 1956, Ruth Elizabeth Harmon, petitioner herein, commenced a proceeding in the Juvenile and Domestic Relations Court, in Fairfax County, Virginia, under the provisions of the Reciprocal Enforcement of Support of Dependents Act of Virginia. She alleged in her verified petition that she is the wife of Francis L. Harmon; they were married on June 10, 1942, in Washington, District of Columbia; she resides in Alexandria, Virginia; she and Francis are the parents of Pauline E. Harmon, who was born December 8, 1944; petitioner and Pauline are entitled to support from Francis; he never has supported them according to his means and earning capacity; Francis resides (at a specified address) in Los Angeles County, California.

The judge of said court in Virginia made a certificate which stated, among other things, that in the opinion of the judge the petition sets forth facts from which it may be determined

that Francis owes a duty of support and that such petition should be dealt with according to law. Exemplified copies of the following documents were transmitted to the superior court in Los Angeles County, California: the petition; the certificate of the judge; the Code of Virginia relating to the Reciprocal Enforcement of Support of Dependents Act; the testimony of Ruth; and an affidavit of Ruth as to her inability to pay filing fee and other costs.

The superior court, in Los Angeles County, issued an order directing Francis to show cause why an order should not be made on the basis of said petition. Hearings were had, in said superior court upon the order to show cause, on March 29 and May 17, 1956. The court found that Pauline is the minor child of Ruth and Francis; the minor is residing with Ruth in Fairfax County, Virginia, and the minor is partially dependent upon Francis for support; Francis owes a duty of support of the minor; Francis resides in Los Angeles County; a reasonable amount to be contributed by Francis toward the support of the minor is $30 a month, and he has the ability to pay that amount. The court ordered that Francis pay, through the office of the probation officer of Los Angeles County, for the support of the minor $15 on the 10th and 25th days of each month commencing May 25, 1956, and that the probation officer hold all the money, so paid, pending the decision on appeal.

Defendant Francis L. Harmon appeals from said order of May 17, 1956.

At the hearings in Los Angeles County, Francis was represented by his counsel, Mr. John A. Weyl; and Ruth was represented by the district attorney.

At the hearing on March 29, the defendant Francis testified, under section 2055 of the Code of Civil Procedure, as follows: he is employed by the Department of Water and Power of the City of Los Angeles, and his take-home pay is $292 a month (later it was said the amount was $394 a month); his daughter, Pauline, is 11 years of age; Ruth deserted him on December (September) 25, 1946, and he has been separated from her since that time; at that time he was living in Michigan, and Ruth took Pauline away from him without his knowledge and consent; Ruth obtained a divorce in the District of Columbia; he did not contest the divorce action; he has remarried; he has sent a few checks, now and then, for the support of Pauline; he sent checks in February and January, 1956, and December, 1955, in the amounts of

$20, $10, and $25 respectively. At that hearing the attorney for Francis requested a continuance in order that he might have an opportunity to submit written interrogatories which he desired to ask Ruth, who was in Virginia. Upon stipulation, it was ordered that the interrogatories be copied in the reporter's transcript. The transcript, which included the interrogatories, was sent to the Virginia court.

At the beginning of the said hearing, defendant made a motion to quash the service of process, as to him, upon the ground that no duty of support was imposed upon him under section 1670 of the Code of Civil Procedure, and that the provisions of said section were unconstitutional in that they deprive him of property without due process of law, and that the services of the prosecuting attorney and the use of public money, in such a matter, are in contravention of the laws of California. He also objected to the proceedings on the grounds (1) that the initiating papers did not show that the Virginia court had determined the amount that should be paid for support, and (2) that the petitioner (Ruth) was not a bona fide resident of Virginia but was a resident of the District of Columbia. The motion was denied.

At the hearing on May 17, 1956, the interrogatories and Ruth's answers thereto were in the file of the case and were before the court. The attorney for defendant stated that the amount of defendant's take-home pay was $394 a month instead of $292 as shown by the transcript. Defendant's attorney renewed his motion to quash service of process, and he stated that the Reciprocal Enforcement of Support Act was unconstitutional in several respects. (The specifications regarding unconstitutionality were the same as those presented on this appeal, as hereinafter referred to.) The motion to quash was denied.

Some of the testimony of Ruth, as shown by the interrogatories and her answers, was as follows: she has resided in Alexandria, Virginia, one year and seven months; the divorce decree, which was obtained in Washington, D. C., did not provide for alimony or child support; she is employed by the Internal Revenue Service (in Washington, D. C.) as a clerk-typist; her take-home pay is $2,800; in September, 1946, Francis took Pauline from the home of Ruth and Francis, in Maryland, to the home of Francis' mother in Grand Rapids, Michigan; she (Ruth) received a telegram from Francis (stating that he and Pauline had gone to his home in Michigan, and asking Ruth to bring Pauline's things); after Ruth

had been in Grand Rapids two days she took Pauline and left Grand Rapids; Francis was in Michigan at his mother's home when Ruth last saw him; she intends to reside permanently in Virginia; she did not move to Virginia for the purpose of filing the present proceeding; her present status is that of divorcée.

At the hearing on May 17, defendant testified that he and Ruth were married on June 10, 1942, in the District of Columbia; a few months thereafter they moved to Maryland where they lived about four years; on September 22, 1946, he left Maryland and went to Grand Rapids; he took Pauline with him; he sent a telegram to Ruth, advising her to come to Grand Rapids; Ruth came there the next day; one afternoon while he was away from his mother's home in Grand Rapids, Ruth left Grand Rapids and took Pauline with her; four days later Ruth told him by telephone that she was in Washington, D. C.; he has not seen Ruth since she left Grand Rapids; in October, 1946, he went to Guam to work on a project for the Navy, and then he wrote to Ruth stating that when the Navy assigned a house to him she should come to Guam; she ignored the letter; after he had been in Guam 18 months, he went to Hawaii and obtained a position in a shipyard; he asked Ruth to come there, but she did not come; he has been in Los Angeles since October, 1951; while in Guam he received a document from the court in Washington; he could not go to Washington to contest the divorce action; when he arrived in Los Angeles, she had obtained a divorce; from November, 1944, to April, 1946, he sent several checks in various amounts, ranging from $20 to $40, to Ruth; he has not supported Ruth since 1946; he has been able and willing, at all times, to support Pauline provided she is at his domicile; he has sent gifts and money to Pauline at Christmas; the approximate amount of his monthly expenses is $425.

The Reciprocal Enforcement of Support Act will be referred to herein as the Act.

■ Appellant asserts that the provisions of the Act (Code Civ. Proc., §§ 1650-1690, incl.) are unconstitutional in that section 1653, wherein the "Duty of support" is defined, is so vague and indefinite that men of common intelligence must guess as to its meaning. Section 1653, subdivision (6), provides: " '*Duty of support*' includes any duty of support imposed or imposable by law, or by any court order, decree or judgment, whether interlocutory or final, whether incidental to a proceeding for divorce, judicial separation, separate main-

tenance or otherwise." Section 1670 of said code provides: "Duties of support enforceable under this title are those imposed or imposable under the laws of any state where the alleged obligor was present during the period for which support is sought or where the obligee was present when the failure to support commenced, at the election of the obligee." Appellant argues that since the evidence shows that there has never been a prior court order regarding support, no duty is imposed upon him by law or court order, and therefore any order made in this proceeding as to him must rest on a duty imposable by law. He argues further that since Ruth has deprived him of the custody of the child, the duty to support the child rests with Ruth, and therefore no duty is imposable by law upon him in California to support the child. He argues further that since no duty of such support is imposable in California, and since it must be presumed (in the absence of evidence as to the law of Virginia) that the law of Virginia is the same as the law of California, no such duty is imposable upon him in Virginia. Appellant's further statement that the California court could not take judicial notice of the laws of Virginia is not an accurate statement. Section 1875 of the Code of Civil Procedure of California provides, in part: "Courts take judicial notice of the following facts: . . . 3. . . . the laws of the several states of the United States and the interpretation thereof by the highest courts of appellate jurisdiction of such states." Subdivision 6 of section 20-88.13 of the Code of Virginia is the same as subdivision 6 of section 1653 of the Code of Civil Procedure of California, except that in the Virginia code the word "legal" precedes the word "separation" which is near the end of the sentence (thereby reading "judicial legal separation"). The provisions of subdivision 6 of said section 1653 are not so vague or indefinite that by reason thereof they are unconstitutional, as applied to the facts in the present matter. Ruth obtained a divorce from defendant in Washington, D. C., several years ago, and at that time defendant was in Guam and he knew of the pendency of the action, but he did not contest it. Pauline has resided with Ruth since 1946 and was residing with her at the time of the divorce. A duty was imposable upon defendant to support his minor child.

Appellant asserts that the Act is unconstitutional in that it denies him the equal protection of the laws of California. He argues that since he has never been a resident of Virginia, any attempt, under the provisions of section 1670

of the Code of Civil Procedure of California, to subject him to the laws of Virginia is a denial of the protection of the laws of California; and that the theory that he is being subjected to the laws of California only and that the Virginia court is merely assisting in procedure (as argued in other cases) is unrealistic. He argues further that the act (Code Civ. Proc., § 1655) denies him the equal protection of the laws by purporting to allow the entry of an order for the support of a nonresident child whose custody is not subject to the jurisdiction of the court; that said section deprives him of the right of asking for the custody of the child and for other relief which would be available if the child were before the California court, and denies him relief which is available to other fathers who are residents of California. In *Smith* v. *Smith*, 125 Cal.App.2d 154 [270 P.2d 613], it was said at page 169: "The equal protection clause does not preclude the states from resorting to classification, but only requires that the classification be reasonable, not arbitrary, and rest on some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly situated will be treated alike. . . . The support law operates as to persons in this state on the same basis. The classification of certain persons as being entitled to support is no different from support statutes which operate between residents of the same state. The purpose of the classification is a reasonable one and it has a fair and substantial relation to the object of the law. The support law provides a reasonable classification when tested in the light of the traditional judicial application of the equal protection clause." This contention is not sustainable.

■ Appellant also contends that the act is unconstitutional in that it denies him the privileges and immunities guaranteed by the United States and California Constitutions. He argues that the act (referring to Code Civ. Proc., § 1690) allows a nonresident petitioner to bring an action in California without being subjected to the jurisdiction of California courts in the matter of a counterclaim, cross-complaint, or other affirmative relief. In *Landes* v. *Landes* (1956), 153 N.Y.S.2d (Court of Appeals) 14, it was said at page 19: "Reciprocal enforcement of a support order aimed at this primary parental obligation may not be avoided or excused by resort to the immunities and privileges clause of the Federal Constitution . . . ." This contention is not sustainable.

■ Appellant asserts that this proceeding cannot be main-

tained in behalf of the minor unless the minor is a party to the proceeding. Section 1675 of the Code of Civil Procedure of California provides: ''A complaint on behalf of a minor obligee may be brought by a person having legal custody of the minor without appointment as guardian ad litem.'' Cases wherein a mother was petitioner in proceedings for orders for support of minor children are: *Smith* v. *Smith,* 125 Cal.App. 2d 154 [270 P.2d 613]; *Whittlesey* v. *Bellah,* 130 Cal.App.2d 182 [278 P.2d 511]; and *Smith* v. *Smith,* 131 Cal.App.2d 764 [281 P.2d 274]. This contention is not sustainable.

Appellant asserts further that such a proceeding as the present one cannot be brought by a person who does not have legal custody of the minor, and cannot be brought when there has been no adversary proceeding concerning the custody of the child. Section 1675 of the Code of Civil Procedure does provide, as above shown, that a complaint on behalf of the minor may be brought by a person having legal custody of the minor. Appellant argues to the effect that since the divorce decree was granted in an ex parte proceeding, when he was not within the jurisdiction of the court that granted the decree, it would appear that Ruth, the mother, who obtained the divorce decree and who filed the petition herein for support of the child, did not have legal custody of the minor. Pauline was residing with her mother when the decree was granted and has resided with her since that time. This contention is not sustainable.

Appellant asserts that such a proceeding as this one cannot be maintained under circumstances where the wife departs from the marital domicile and moves to another jurisdiction. He argues that the purpose of the Act is to obtain support for wives and children who have been abandoned, and where a father absconds to another state. He argues further that since Ruth left him and took the child with her, and since he chose a reasonable place or mode of living and Ruth has failed to conform thereto, he cannot be considered in the class of an absconding father. It was Ruth who obtained the divorce. The record does not show upon what ground the divorce decree was granted. The testimony of Ruth, as shown on the document herein, dated November 10, 1955, and entitled ''Testimony of Petitioner,'' states that ''Non-support'' led to the separation from Francis. Defendant relied on the divorce decree when he remarried. It does not appear herein that the question has been determined as to whether he deserted her or she deserted him. The material

question herein is whether defendant owes a duty to support his daughter. ■ There is no requirement that as a condition to bringing a proceeding under the Act there be a showing that the obligor has absconded. In *Smith* v. *Smith, supra,* 131 Cal.App.2d 764 [281 P.2d 274], it was said at page 770: "The acts in question [Uniform Reciprocal Enforcement Acts] are not limited to cases where an obligor flees the jurisdiction of an initiating state." ■ In the present case the evidence was sufficient to support the finding that defendant owes a duty to support his daughter.

■ Appellant asserts that a father who is entitled to the custody of a minor child, and who is willing and able to support the child at his domicile, cannot be required to furnish support for the child outside the father's home. There has been no determination that the defendant is entitled to the custody of the child. Defendant's assertion that he is willing and able to support his daughter at his domicile is not a sufficient answer to the petition herein.

■ Appellant asserts that the trial judge abused his discretion in not allowing him visitation privileges, with the child, during summer vacation. Appellant states in his brief that, after the hearing on May 17, he made a motion to reopen the matter for a further hearing and to modify the order of May 17 so that he might have reasonable visitation privileges with his child and might have the child with him during summer vacation. His brief also states that the motion was denied without prejudice. It does not appear that the judge abused his discretion.

■ Appellant asserts that the initiating papers were not sufficient to constitute a cause of action or to support the proceedings or order herein. His argument is that the petition was not in the name of the child; that the petition alleged that Ruth is the wife of Francis, whereas it was shown by her answer to an interrogatory that she obtained a divorce in 1950; and that the certificate transmitted from the Virginia court does not show, in the blank space provided therefor, the amount needed for support. The point with reference to the child not being named as a party to the proceeding has been discussed hereinabove. It was not necessary that the Virginia judge state in the certificate the amount required for support. At the hearings in California, evidence was presented as to Ruth's income, the expenses and needs of Pauline, and the income and expenses of defendant. The petition, and the certificate of the Virginia court, were sufficient.

Defendant was not denied due process of law, or the equal protection of the laws, or the privileges and immunities guaranteed by the United States and California Constitutions. The order is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 25, 1958.