Debra KAMMERSELL, Plaintiff
and Appellee,

v.

Jeffrey KAMMERSELL, Defendant
and Appellant.

No. 890238–CA.

Court of Appeals of Utah.

May 18, 1990.

John T. Caine (argued), Ogden, for defendant and appellant.

Richard J. Culbertson and Karl G. Perry (argued), Ogden, for plaintiff and appellee.

OPINION

Before BENCH, GREENWOOD and JACKSON, JJ.

·JACKSON, Judge:

Jeffrey Kammersell appeals from a March 1988 district court order modifying a 1981 Utah divorce decree by lowering his child support obligation. He contends the modification should have been retroactive to an October 1982 Pennsylvania court order in an action initiated under the Uniform Reciprocal Enforcement of Support Act (URESA). We affirm.

The parties were divorced in Weber County, Utah, in November 1981, and Jeffrey was ordered by the district court to pay $150 per month in child support for each of the parties' two minor children. He moved to Pennsylvania shortly thereafter. Debra Kammersell received public assistance from the State of Utah beginning in October 1981 and assigned her right to collect child support to the Utah Department of Social Services ("the Department"). In June 1982, the Department filed a petition in Weber County district court pursuant to the Utah Uniform Reciprocal Enforcement of Support Act, Utah Code Ann. §§ 77–31–1 to –39 (1982), to collect from Jeffrey $2,200 in accumulated child support arrearages. Pursuant to Utah Code Ann. § 77–31–19 (1982), the petition was certified to the appropriate court in Pennsylvania, which had adopted the 1968 Revised Uniform Reciprocal Enforcement of Support Act (RURESA), 9B U.L.A. 381–552 (1987), and codified it at 42 Pa. Cons.Stat.Ann. §§ 6741–80 (Purdon 1982).[1]

Jeffrey responded to the petition in Pennsylvania by filing a counterpetition for prospective modification of the amount of child support based on a substantial change in his financial circumstances since entry of

---

1. Since 1985, the RURESA has been recodified in Pennsylvania at 23 Pa.Cons.Stat.Ann. §§ 4501–40 (Purdon Supp.1989).

the Utah divorce decree. He had allegedly returned to school in Pennsylvania and was working only part-time for less money per hour than he was making at the time of the parties' divorce. The Pennsylvania court determined an amount of arrearages and ordered their payment, but the court set monthly support payments at only $80 per child prospectively from October 1982.[2] This order made no mention of the outstanding Utah order. Jeffrey thereafter paid monthly child support of $160. The Department filed another URESA petition in Utah in December 1985 seeking to collect the arrearages that had accumulated under the unmodified Utah divorce decree since October 1982 when Jeffrey began paying at the lower rate. That petition was certified to the appropriate court in Pennsylvania. The Pennsylvania court, however, apparently evaluated the claim for unpaid support in light of its own October 1982 support order and found no arrearages.

In mid-February 1988, Jeffrey filed a motion in Weber County district court seeking to modify the Utah divorce decree by reducing his child support obligation to $160 because of substantially changed financial circumstances. He requested the Utah court to give "full faith and credit" to the Pennsylvania court's October 15, 1982, RURESA order setting his support obligation at that amount, by making the modification of the Utah divorce decree retroactive to that date. Debra was served with the petition to modify on March 28, 1988. In her answer, she opposed the petition and counterclaimed for child support arrearages that had accumulated under the divorce decree since September 1982 in the amount of $140 per month, the difference between the $300 ordered by the Utah court and the $160 ordered by the Pennsylvania court.

The domestic relations commissioner recommended a modification of the Utah divorce decree to reduce the child support obligation to $160 per month retroactive to October 15, 1982, and accordingly found no arrearages since that time. Upon appellee's objection, the question of whether a Utah court, faced with a petition to modify a Utah divorce decree ordering payment of child support at a fixed amount, must give full faith and credit to a foreign court's intervening RURESA order setting support at a lower amount, was considered by Judge David E. Roth. Judge Roth answered this question in the negative, concluding that *Oglesby v. Oglesby*, 29 Utah 2d 419, 510 P.2d 1106 (1973), was controlling. He therefore entered judgment for Debra in the amount of arrearages that had accrued under the Utah decree from September 1982 until June 1988, when the domestic relations commissioner acted on Jeffrey's modification petition and determined there was a substantial change of circumstances. The judgment and order modified the original divorce decree by lowering Jeffrey's monthly child support obligation to $160 prospectively from June 1988.

The only issue before us in this appeal[3] is whether the trial court correctly concluded that the Pennsylvania RURESA orders did not modify Jeffrey's support obligation under the prior Utah divorce decree.

In *Oglesby*, the parties' 1963 divorce decree ordered the husband to pay $200 monthly child support. He moved to Washington and fell behind in the payments. His ex-wife instituted an action in Utah in 1966 under our version of URESA to recover the delinquencies, and the petition was certified to Washington as the "respond-

---

2. The Pennsylvania court documents submitted to the domestic relations commissioner in support of appellant's modification petition did not include a certified copy of any October 15, 1982, order signed by a judge or of the underlying findings of fact and conclusions of law. *See* Utah R.Civ.P. 44. Appellee, however, did not object to the "order" introduced by appellant, a one-page fill-in-the-blank order signed only by appellant and his Pennsylvania counsel.

3. Appellant mentions in his brief the issue of whether the modification of the Utah order should have at least been retroactive to the date his modification petition was filed in Utah. Because appellant has made no argument in support of his contention, we do not address this issue other than to point out that Utah Code Ann. § 30–3–10.6(2) (1989) permits modification of a support obligation to be retroactive only from the date the modification petition is served on the obligee.

ing" URESA state. The Washington court entered a support order prospectively setting monthly child support at $160, which the husband thereafter paid. When the ex-wife later sought through a show cause order in the Utah divorce case to recover the $40 unpaid monthly differential between the support paid and the support ordered in the Utah decree, the trial court concluded that the Washington order had modified the Utah decree and thus there were no arrearages.

In reversing the trial court, the Utah Supreme Court recognized that a responding state in a URESA action may enter a prospective order of support setting a different amount of support than that set in a prior foreign order or decree. *Oglesby*, 510 P.2d at 1107. This is currently the view of a majority of jurisdictions that have adopted URESA or RURESA. *E.g., Koon v. Boulder County Dep't Soc. Servs.*, 494 So.2d 1126 (Fla.1986); *Wornkey v. Wornkey*, 12 Kan.App.2d 506, 749 P.2d 1045, 1049–50 (1988); *Miskimon v. Miskimon*, 173 Mich.App. 393, 433 N.W.2d 419, 421–22 (1988); *Campbell v. Jenne*, 172 Mont. 219, 563 P.2d 574 (1977); *Commonwealth v. Byrne*, 212 Pa.Super. 566, 243 A.2d 196 (1968); *Thompson v. Thompson*, 366 N.W.2d 845, 847 (S.D.1985); *McEvily v. McEvily*, 140 Vt. 279, 437 A.2d 1110 (1981); *Jaramillo v. Jaramillo*, 27 Wash.App. 391, 618 P.2d 528 (1980). *See generally* Annotation, *Construction and Effect of Provision of Uniform Reciprocal Enforcement of Support Act. that No Support Order Shall Supersede or Nullify Any Other Order*, 31 A.L.R.4th 347, 356–60 (1984 & Supp.1989) (hereinafter Annotation).

Nonetheless, the *Oglesby* court concluded that the Washington URESA order did not modify the 1963 Utah divorce decree, and monthly arrearages of $40 had therefore accrued under the Utah decree after entry of the Washington order. Section 30 of URESA, which was in effect in Utah and Washington at the time, provided:

No order of support issued by a court of this state when acting as a responding state shall supersede any other order of support but the amounts for a particular period paid pursuant to either order shall be credited against amounts accruing or accrued for the same period under both. 9B U.L.A. 600 (1987). In light of this "anti-supersession" provision and another section stating that the URESA remedies were in addition to, not in substitution for, other remedies,[4] the court held that the Washington URESA order was not binding in a subsequent Utah action by the support obligee to enforce the Utah decree. Thus, the husband was not relieved of his obligation under the Utah decree to pay $200 monthly, and the wife could collect the $40 monthly arrearage. Most other courts interpreting these URESA sections in actions to enforce an original support order have reached the same conclusion. *E.g., Despain v. Despain*, 78 Idaho 185, 300 P.2d 500 (1956); *Banton v. Mathers*, 159 Ind. App. 634, 309 N.E.2d 167 (1974); *Howard v. Howard*, 191 So.2d 528 (Miss.1966); *Campbell*, 563 P.2d at 576; *Banks v. Banks*, 221 N.J.Super. 282, 534 A.2d 419 (1987); *Hester v. Hester*, 59 Tenn.App. 613, 443 S.W.2d 28 (1968). *Contra Harris v. Harris*, 512 So.2d 968 (Fla.Dist.Ct.App. 1987).

We conclude that the trial court in the instant case correctly determined that the October 1982 Pennsylvania order did not modify appellant's support obligation under the prior support order in the 1981 Utah divorce decree. When URESA was revised in 1968, the substance of section 30 was moved to section 31 and the word "nullify" was substituted for the word "supersede" in the former section. In 1982, this section of RURESA, as enacted by Pennsylvania, provided:

A support order made by a court of this Commonwealth pursuant to this subchapter does not nullify and is not nullified by a support order made by a court of this Commonwealth pursuant to any other law or by a support order made by

---

**4.** URESA § 3, 9B U.L.A. 572 (1987). This section was retained in RURESA § 3, 9B U.L.A. 408 (1987).

a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, *unless otherwise specifically provided by the court.* Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this Commonwealth.

42 Pa.Cons.Stat.Ann. § 6771 (Purdon 1982) (emphasis added). The Pennsylvania RURESA order does not refer to the outstanding Utah support order and does not purport to alter, supersede, or nullify the prior Utah order.[5] In such circumstances, this antinullification section of RURESA has been consistently interpreted—as the predecessor provision was interpreted in *Oglesby* and other cases cited above—with the courts holding that a foreign support order issued by a responding state under RURESA does not modify the amount of the support obligation owed and accruing under a prior unmodified support order in a divorce decree when the obligee seeks to enforce that original order. *E.g., Banton,* 309 N.E.2d at 171–72; *In re Marriage of Wettstein,* 160 Ill.App.3d 554, 113 Ill.Dec. 1, 514 N.E.2d 783 (1987), *appeal denied,* 118 Ill.2d 544, 117 Ill.Dec. 233, 520 N.E.2d 394 (1988); *Miskimon,* 433 N.W.2d at 422; *Thompson,* 366 N.W.2d at 847–48; *see generally* Annotation, 31 A.L.R.4th at 365–77.

We do not believe this result is unfair to appellant. He could have—and, in light of *Oglesby,* should have—sought a modification of the Utah decree in the fall of 1982 based on his purported substantial change in circumstances. *See Miskimon,* 433 N.W.2d at 422–23.

The order of the trial court is affirmed.

BENCH and GREENWOOD, JJ., concur.

---

**5.** Thus, we need not consider the extent to which a foreign RURESA order expressly purporting to modify a prior Utah support order in a divorce decree would be given full faith and credit in a subsequent Utah action to enforce the original order. In such circumstances, a court would have to consider, among other factors, whether the RURESA responding court had personal jurisdiction over the obligee for purposes of prospectively reducing the support originally ordered. *See In re Marriage of Gifford,* 152 Ill.App.3d 422, 105 Ill.Dec. 527, 504 N.E.2d 812 (1987), *rev'd in part and aff'd in part on other grounds,* 122 Ill.2d 34, 118 Ill.Dec. 452, 521 N.E.2d 929 (1988).